Derbigny, J.
delivered the opinion of the court. In the year 1807, the plaintiff and appellant, Antoine Peytavin, partner and representative of the late commercial concern of Key. naud and Peytavin, being then absent from this country, appointed L. M. Reynaud and Auguste Peytavin his agents here, to administer the property of the said concern and collect its debts. Under this power of attorney, the agents of the appellant received from one Alexander Millet, of the parish of Assomption, a note of hand of 17,427 dollars, payable in March, 1810, and a mortgage on his property to secure the paymant of that sum; and, when the note became due, Millet having failed to pay, they instituted a suit against him for a balance of 12,387 dollars 50 *257 cents, and caused the plantation, on which he lived, and three slaves to be seized and sold.— At that sale, Stephen A. Hopkins, their attorney, bid on the plantation and one slave, and had them struck off to himself, for the sum of 5,900 dollars.—This sum, with the interest thereof, is now demanded by Antoine Peytavin, against Hopkins’s widow, curatrix of his estate; she answers that, although her husband appears to be the purchaser of the property, the truth is that he bought it, at the request and for the use of his clients, and that he ever was, and his representatives now are, ready to reconvey it to them.
The first thing to ascertain is, whether Hop-kin’s really bought for the use of his employers. If so, we shall then have to examine whether he was duly authorised to that effect. In the sheriff’s sale, Hopkins appears to have bought in his own name, and to have paid the purchase money; so that, if this instrument stood uncon-tradicted by him, the recourse of the plaintiff to obtain that money would have been against the sheriff. But, Hopkins has endorsed on the back of that sale, that although he appears to have paid the price of the property bought, the fact is, that he paid nothing, because the purchase was made at the request, and for the benefit and account of Reynaud and Peytavin. Such a declaration from the prosecuting attorney having dis *258 charged the sheriff, the plaintiff has thought fit to demand from the estate of Hopkins that same money, denying that he bought the property for his employers, and further contending that if he did so, he acted without authorisation.
To prove that Hopkins had really purchased for his own account, notwithstanding his declaration to the contrary, the plaintiff has produced evidence of his conversations and of his conduct in relation to the plantation and slave, struck off to him. But, both his conversations and conduct, in that respect, were so various and contradictory, that but little can be presumed from either. His. written affirmation that he bought for his employers stands, therefore, unimpeached—and the question now is whether he was authorised to that effect.
Since this case was remanded for a new trial with instructions to the judge to admit certain evidence, which had been refused, other testimony was offered on the part of the defendant, which was again excepted to; 5 Martin, 438. Auspste Peytavin, one of the agents of the plaintiff, was called as a witness, and the plaintiff objected to his admission on the ground, that he was interested as answerable to him, in case it should turn out that he had exceeded his powers. But the testimony of Auguste Peytavin, so far as it might establish that he had authoris- *259 ed Hopkins to buy for the firm of Reynaud and Peytavin, was a testimony against his own interest and of course not liable to any objection.
Auguste Peytavin declares that both he and the other agent of the plaintiff did instruct Hopkins to “ bid off for the firm of Reynaud and Pey-tavin as much of the property as to him should seem proper, and to let the same remain in his (Hopkins’s) name until certain difficulties were adjusted.” He further swears that he (the deponent) took possession of the plantation, and that it is now possessed by L. M. Reynaud, the othes agent, who considers it as his property: as to the slave, he says, that Hopkins was authorised to keep her, in payment of what was due him by his employers.
It is then very clear that Hopkins was directed to act as he has done, and that if responsibility lies any where, it lies at the hands of the plaintiff’s own agents. Whether by causing the property seized to be struck off to their constituent, they have exceeded their powers, is a question to be settled between them, but which we see no necessity to investigate, in the present case. All we find necessary here to decide is, that the estate of Hopkins is not liable to the plaintiff for the price of the property, he purchased by the order of his agents, for his use or theirs, as the case may turn.
Moreau for the plaintiff, Turner for the defendants.
^ *s> theref°re> ordered, adjudged, and decreed, that the judgment of the district court be affirmed with costs.